IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES CHRISTIANSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-06018-CV-NKL-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff James Christiansen appeals the Commissioner of Social Security's final decision denying his application for disability insurance benefits and supplemental security income. For the following reasons, the decision is affirmed.

**I. Background**

**A. Christiansen's Medical History**

Christiansen is a forty-two year old man who alleges that he became disabled on April 16, 2010. [Tr. 280, 286, 288]. He first began experiencing joint pain in 1998. [Tr. 559]. A 2001 x-ray revealed degenerative changes, and in 2006 Christiansen reported burning and numbness in his knees. He was diagnosed with left meralgia paresthetica. The issues persisted in the coming years, and Christiansen reported leg weakness, aches and pains, and numbness in his arms and legs. [Tr. 492, 736]. He began to walk with a cane. [Tr. 708]. A 2009 x-ray of Christiansen's lumbar spine showed degenerative

changes. [Tr. 865]. In 2010, Christiansen reported difficulty performing routine daily activities, such as getting out of bed, showering, and dressing. [Tr. 1226].

Christiansen also experienced psychological impairments. In 2007, he reported to Dr. Scott Sumerall that he had experienced difficulties with his short-term memory since being assaulted in 2002. He also reported discouragement, lack of energy, nervousness, and restlessness. [Tr. 484, 486]. Dr. Sumerall diagnosed Christiansen with depression and anxiety disorder. [Tr. 486]. The same year, Christiansen sought mental health treatment through the Veteran's Administration. Through this consultation, he was diagnosed with alcohol abuse and personality disorder. [Tr. 446].

In 2008, Christiansen reported experiencing anxiety, depression, and fluctuating moods. [Tr. 729]. He first saw Nurse Practitioner Dena White at the VA Center on September 5, 2008, and reported having nightmares about a past assault. [Tr. 734]. In subsequent visits to Nurse White, Christiansen relayed that he was stressed by a custody battle in which he was engaged with his ex-girlfriend. On February 2, 2010, Christiansen related to Dr. Ed Malewski and Glenn Schowengerdt that he was unhappy "most of the time" and experienced anxiety episodes in which he had chest pains and a racing pulse in addition to having difficulty breathing. [Tr. 1149].

On March 2, 2010, Nurse White completed a Medical Source Statement-Mental on Christiansen's behalf. Christiansen reported to Nurse White that his mood had been "up and down" and he had continued difficulty sleeping. [Tr. 948]. In her report, White noted that Christiansen had moderate limitations in his ability to interact appropriately with the general public and marked limitations in his abilities to complete normal work-

2

related tasks. She also noted that Christiansen had limited ability to maintain attention and concentration for extended periods of time. [Tr. 1023-24].

Christiansen's health problems continued through 2011. He again visited Dr. Malewski and Mr. Schowengerdt on June 2, 2011. While Christiansen reported that his mood had improved, he was still experiencing crying spells, feelings of hopelessness and helplessness, and nightmares. [Tr. 1105, 1146]. He was also experiencing weekly episodes of chest pains, shortness of breath, sweating, and loss of concentration. [Tr. 1146]. Christiansen still had slowed and occasionally uncoordinated motor behavior, lethargic speech, diminished comprehension, and difficulty with memory. [Tr. 1145]. Dr. Malewski and Mr. Scowengerdt diagnosed Christiansen with dementia, PTSD with panic attacks, and dysthymic disorder. [Tr. 1147].

On September 10, 2013, Christiansen testified at a hearing before an Administrative Law Judge ("ALJ"). Christiansen testified that he had pain all over his body, particularly his knees, and stated that he walked with a cane at all times. [Tr. 35]. Christiansen also reported an increase in his anxiety and stress levels. [Tr. 35]. A medical expert who testified at the hearing explained that Christiansen had diagnoses of personality disorder and chronic pain syndrome, but noted that these conditions did not meet or equal a Listing. [Tr. 40, 42].

B.  **The ALJ Decision**

The ALJ denied Christiansen's request for benefits upon concluding that Christiansen was not disabled from April 16, 2010 through September 20, 2013, the date

3

of his decision. This is the relevant time period because a prior ALJ had previously determined on April 15, 2010 that Christiansen was not disabled.

The ALJ in this proceeding also concluded that Christiansen was not as physically or mentally disabled as alleged, and found that despite Christiansen's post-traumatic stress disorder, depression, personality disorder, fibromyalgia, and knee and back disorders, he still retained the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The ALJ found that Christiansen had the capacity to perform the following work:

> [N]on-complex, simple, routine repetitive work of sedentary exertion as defined in 20 CFR 404.1567(a) and 416.967(a) in that he is able to lift and/or carry 10 pounds occasionally, a nominal amount frequently, sit for 1 hour, stand for 1 hour, walk for 1 hour, and sit for 6 hours in an 8-hour day; he cannot crawl, kneel, crouch, squat, push or pull carts or wagons, or lift from ground level. He should avoid dust, fumes, gases, heights, moving machinery, foot controls, loud noises, and climbing ladders, ropes or scaffolds. He should work on only smooth level surfaces and perform work involving low stress with minimal interaction with the general public.

[Tr. 16]. A vocational expert testified that with this RFC, an individual would be able to perform the duties of repetitive occupations such as a lens inserter, production checker, or wire wrapper. [Tr. 20].

In evaluating Christiansen's disabilities, the ALJ considered the medical evidence of the record, as well as Christiansen's testimony regarding his disability. The ALJ acknowledged that Nurse White and Dr. Malewski found Christiansen to be suffering from severe depression and PTSD, but determined their findings to be inconsistent with those of Dr. Orth, another physician, and other negative screenings for PTSD and

4

depression. The ALJ concluded that Christiansen was not entirely credible because his statements contradicted parts of the record, his reported symptoms fluctuated, and he infrequently sought mental health treatment.

## III. Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination of whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## IV. Discussion

Christiansen argues that the ALJ's decision was not supported by substantial evidence because the ALJ failed to properly explain the weight given to the opinion of his nurse practitioner, Dena White.

Typically, controlling weight is given to the medical opinions of treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996). A nurse practitioner is not a treating physician, but rather an "other source." 20 C.F.R § 404.1513(d). Although a nurse practitioner's opinion is not given the presumption of controlling weight afforded treating sources, such opinions are important and should be weighed on issues such as impairment severity and functional effects. *Watson v. Astrue*, No. 08-6006-CV-SJ-NKL-

5

SSA, 2009 WL 4728991 at *5 (W.D. Mo. Dec. 4, 2009). In weighing "other source" opinions, the following factors should be considered:

> (1) [h]ow long the source has known and how frequently the source has seen the individual; (2) [h]ow consistent the opinion is with other evidence; (3) [t]he degree to which the source presents relevant evidence to support an opinions; (4) [h]ow well the source explains the opinion; (5) [w]hether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) [a]ny other factors that tend to support or refute the opinion.

SSR 06-03p, 2006 WL 2329939 at *4 (Soc. Sec. Admin. Aug 9, 2006).

While an adjudicator is not required to explain her consideration of each piece of evidence in her decision, an ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939 at *6 (emphasis added). When a reviewing court cannot determine from the ALJ's opinion whether the ALJ properly reviewed the evidence, remand is warranted. *Willcockson v. Astrue*, 540 F.3d 878, 879-80 (8th Cir. 2008).

Here, the ALJ acknowledged Nurse White's opinion but did not specifically indicate the weight given to the opinion. This is not surprising because her opinion about Christiansen's limitations was given in March 2010, before the relevant time period and before the prior ALJ's decision to deny benefits, even though Nurse White's opinion was part of the record at the time. While that opinion was relevant as background information to evaluate "new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding," it cannot be the basis for effectively reviewing a

prior denial of social security benefits. *Hillier v. Social Sec. Admin.*, 486 F. 3d 359, 365 (8th Cir. 2007) (quoting *Robbins v. Sec'y of Health and Human Servs.,* 895 F.2d 1223, 1224 (8th Cir. 2007)).

Nonetheless the ALJ did acknowledge Nurse White's opinion and cited the regulations requiring such opinions to be considered. That regulation also contains the factors to be considered. Given this record, the Court cannot say that the ALJ did not consider those factors as required. While a clearer explanation would have avoided the argument raised by Christiansen, it would be a quibble to remand for further explanation of why the ALJ gave more weight to Dr. Orth, particularly because Nurse White's opinion was given prior to the relevant time period. Further, there is substantial evidence to support the rejection of Nurse White's opinion concerning limitations, because during the relevant time period, Christiansen only occasionally saw Nurse White and the record does not suggest that Christiansen's condition materially declined after April 2010.

On this record, the Court is confident it can evaluate the reasons for the ALJ's decision to not give controlling weight to Nurse White's opinion. Further, there is substantial evidence to support the decision of the ALJ and therefore remand is not necessary.

## V. Conclusion

The ALJ's decision is affirmed.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  December 4, 2015

Jefferson City, Missouri